# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

UNITED STATES OF AMERICA                                                                      PLAINTIFF

V.                                                              CIVIL ACTION NO. 1:12cv215-SA-DAS

BILLY MIKE GENTRY                                                                             DEFENDANT

## ORDER GRANTING MOTION TO SET ASIDE DEFAULT JUDGMENT

Presently before the Court is Defendant's Motion to Set Aside Default Judgment [17]. Upon due consideration, the Court finds that the motion is well taken and should be granted.

*A. Factual and Procedural Background*

Defendant Billy Mike Gentry is a livestock dealer and market agency located in Houston, Mississippi. Gentry has been engaged in the practice of purchasing livestock on behalf of himself and others for a number of years.

Under the Packers and Stockyards Act of 1921 ("the Act"), Gentry is required to register with the United States Department of Agriculture ("USDA") and post a reasonable bond to secure his performance. In 1990, Gentry purchased livestock but failed to pay the full purchase price when due, in violation of the Act. The Packers and Stockyards Administration then initiated an administrative action against him. Gentry was assessed a civil monetary penalty of $4,000 and ordered to cease and desist from engaging in any business governed by the Act without maintaining a reasonable bond or equivalent.

In 2001, the USDA initiated another administrative action against Gentry. The ALJ subsequently found, by reason of Gentry's default, that Gentry had been informed that his $10,000 bond was inadequate, that a $75,000 bond was required, and that Gentry disregarded such notice and continued to operate as a dealer and market agency without increasing his bond

coverage. As a result, the ALJ imposed a $5,000 monetary penalty and ordered Gentry to cease and desist all such activities until he maintained and filed an adequate bond.

Gentry did not, however, increase his coverage, continuing instead to operate with only a $10,000 bond. Additionally, Gentry underreported the cost of livestock he purchased. In response, the USDA filed a third administrative complaint against him, alleging that Gentry violated the Act by failing to file an accurate annual report. Gentry was served the complaint, but he failed to respond, and ultimately, default was entered against him. An administrative order, again suspending Gentry from purchasing livestock without filing and maintaining adequate bond coverage, was issued. Gentry sought to appeal the decision, but the attempt was subsequently dismissed for procedural deficiencies. The 2008 administrative order therefore became effective on March 18, 2009.

On October 11, 2012, the Government filed a complaint against Defendant based on his failure to comply with the administrative order. The complaint alleged that Gentry purchased livestock at least thirty times between March and April 2009 and at least sixty-nine times between January and March 2011. At the time of the complaint, Gentry still had not increased his bond coverage to $75,000, as required by the 2008 administrative order.

Defendant was personally served with process on October 26, 2012, to which he did not respond. Accordingly, the Clerk granted Plaintiff's Motion for Entry of Default [6] due to Defendant's failure to "plead or otherwise defend . . . ." FED. R. CIV. P. 55(a).

On July 1, 2013, the Government moved for default judgment. Gentry again failed to respond, and the Court set a motion hearing, which was held on December 17, 2013. Although Gentry was provided notice of the hearing, he failed to appear. Following the hearing, the Court granted default judgment for Government, awarding $945,250 plus interest. The Court also

enjoined Gentry from operating as a dealer or market agency until he increased his bond coverage to the full amount required under the regulations and until he re-registered with USDA as required by the 2008 administrative order.

On February 14, 2014, Defendant filed a Motion to Set Aside Default Judgment. Gentry argues the "good cause" analysis under Rule 60(b)(1) weighs in favor of setting aside the default judgment; that the judgment grants relief not requested in the complaint in violation of Rule 8(a)(3) and Rule 54(c); and that the judgment constitutes an excessive fine under the Eighth Amendment. The Government filed a response in opposition to Defendant's Motion, to which Defendant replied.

*B. Standard and Analysis*

Federal courts have the authority under Rule 55 to enter a default judgment. But this is "a drastic remedy not favored by the Federal Rules and resorted to by courts only in extreme situations." Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n, 874 F.2d 274, 276 (5th Cir. 1989). Indeed, federal courts universally prefer a trial on its merits. In re Dierschke, 975 F.2d 181, 183 (5th Cir. 1992).

The decision of whether to set aside a default lies within the sound discretion of the district court. Id. It may relieve a party from a final judgment, order, or proceeding for "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). Where a party seeks to set aside a default judgment, the Court examines three main factors: (1) whether the default was willful, (2) whether setting aside the judgment would prejudice the adversary, and (3) whether the defendant has presented a meritorious defense. In re OCA, Inc., 551 F.3d 359, 369 (5th Cir. 2008). These factors are not talismanic, however, and "[c]ourts have been careful to avoid treating them as though they were exclusive, relying on such other factors including: (1) whether

3

the public interest was implicated, (2) whether there was a significant financial loss to the defendant, and (3) whether the defendant acted expeditiously to correct the default. Dierschke, 975 F.2d at 184.

In reviewing the evidence, the district court need not consider all of the factors; rather, "the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default." Id. Moreover, "Rule 60(b) is applied most liberally to judgments of default, since trial on the merits is to be favored over such a truncated proceeding." OCA, Inc., 551 F.3d at 370. For that reason, "[u]nless it appears that no injustice results from the default, relief should be granted." Id. Further, "where there are no intervening equities any doubt should, as a general proposition, be resolved in favor of the movant to the end of securing a trial upon the merits." General Tel. Corp. v. General Tel. Answering Serv., 277 F.2d 919, 921 (5th Cir. 1960).

I. Whether the Default was Willful

A willful default is an "intentional failure" to respond to litigation. Lacy v. Sitel Corp., 227 F.3d 290, 292 (5th Cir. 2000) (quoting Dierschke, 975 F.2d at 184). Finding that a default is willful "ends the inquiry" so that "there need be no other finding." Lacy, 227 F.3d at 292. Nevertheless, the Court may grant relief from default judgment upon a showing by the defendant that its failure to file a timely answer or otherwise defend resulted from excusable neglect. CJC Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60, 64 (5th Cir. 1992). But when a defendant's neglect is at least a partial cause of its failure to respond, the defendant bears the burden to convince the Court that its neglect was excusable and, thus, not an intentional failure to respond. See Rogers v. Hartford Life & Accident Ins. Co., 167 F.3d 933, 939 (5th Cir. 1999). Once the defendant shows "justifiable neglect, the court may consider other equitable factors." Brown v.

Bandai Am., Inc., 2002 WL 1285265, at *5 (N.D. Tex. June 4, 2002) (citing Federal Sav. & Loan Ins. Corp. v. Kroenke, 858 F.2d 1067, 1069 (5th Cir. 1988)).

Turning to this case, Gentry admits that his failure to respond was due to his own neglect, but argues that it was not willful and should therefore be excused by the Court. In support of this position, Gentry claims that he "misunderstood the proceedings and never understood that there was a federal proceeding against him." At the time Gentry was served with process for this action, he was involved in an ongoing Mississippi state court proceeding styled Carla Lunn v. Billy M. Gentry, in Pontotoc County Chancery Court. Gentry contends that he was frequently being served with legal documents related to that proceeding. Gentry testified that he erroneously believed that the summons and complaint for this federal action, served on him by the U.S. Marshal, were associated with the ongoing state action. Gentry contends further that he first became aware of this action when he saw a press release regarding the judgment against him on the internet. Prior to learning of the judgment, Gentry represents that he never consulted an attorney. Ultimately, Gentry maintains that his failure to respond to the complaint or appear for the hearing was a result of the fact that he misunderstood the documents and was unaware that a federal proceeding had been commenced against him.

In opposition, the Government emphasizes that, not only did the U.S. Marshal serve Gentry with the initial summons and complaint, but Government counsel served him with copies of later pleadings, and this Court served him with notice of the hearing. The Government also argues that Gentry's history of disregarding and avoiding judicial proceedings provides strong evidence that Gentry was aware of this federal proceeding but deliberately chose not to appear or respond.

Throughout the Fifth Circuit, multiple reasons for failing to respond to proceedings have been found sufficient to establish excusable neglect. See Scott v. Carpanzano, 556 F. App'x 288, 295-96 (5th Cir. 2014) (holding that one defendant's negligent reliance on another defendant to protect his interest did not amount to an intentional failure to respond); Parks v. Miss. Dep't of Corr., 2013 WL 1420237, at *2 (S.D. Miss. Apr. 8, 2013) (finding that a failure to respond due to a clerical error did not constitute willful default); Shelby v. City of El Paso, 2012 WL 3929395, at *2 (W.D. Tex. Sept. 7, 2012) (refusing to find willful default when the defendant missed the deadline for filing a response due to staff oversight and computer error).

Relying on the present record, the Court finds that Gentry has provided sufficient evidence to show that his failure to respond was due to excusable neglect. Resolving all doubts in Gentry's favor, the Court is satisfied with his explanation that he mistakenly associated the documents from this proceeding with those of the state court proceeding. Considering the wide range of excuses upheld as sufficient by the Fifth Circuit and the federal courts' universal disfavor of default judgments, the Court finds that Gentry's actions, though negligent, do not amount to an "intentional failure" to respond to the proceeding. As a result, this factor weighs in Gentry's favor.

II. Whether Setting Aside Would Prejudice the Adversary

The Fifth Circuit has consistently held that a plaintiff has not suffered sufficient prejudice to warrant upholding a default judgment when setting it aside does "no harm to plaintiff except to require it to prove its case." Lacy, 227 F.3d at 293 (quoting General Tel. Corp., 277 F.2d at 921). To maintain a default judgment, the plaintiff must show that setting it aside will result in "loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and

collusion." Scott, 556 F. App'x at 298 (quoting Lacy, 227 F.3d at 293). A mere delay in potential recovery is insufficient. Id.

Here, the Government would not suffer sufficient prejudice to maintain the judgment. In its brief opposing Defendant's Motion, the Government did not provide any factual support that it would suffer any prejudice if the judgment were set aside. There would be no lost evidence, as none of it has been lost or destroyed. There would be no increased difficulties in discovery, as both parties should be able to provide the requested information to opposing counsel. And there would be no greater opportunity for fraud or collusion in this action by the setting aside of the judgment. Ultimately, the only prejudice the Government would suffer is a delay in receiving the award and the burden of having to prove its case. As the Fifth Circuit has held these reasons insufficient prejudice to justify a default judgment, the Court finds that this factor weighs in favor of setting aside the judgment.

III. Whether Defendant Presented a Meritorious Defense

According to the Fifth Circuit, "[e]ven in the absence of willful neglect by the defendant or unfair prejudice to the plaintiff, a district court may have the discretion not to upset a default judgment if the defendant fails to present a meritorious defense sufficient to support a finding on the merits for the defaulting party." Lacy, 227 F.3d at 293. Ultimately, in determining whether the defendant has presented a meritorious defense, "[t]he underlying concern is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." Jenkins & Gilchrist a Prof'l Corp. v. Groia & Co., 542 F.3d 114, 122 (5th. Cir. 2008).

Gentry's merits-defense is that the amount of the default judgment imposes an excessive fine in violation of the Eighth Amendment. In support of this position, Gentry emphasizes the

7

wrongful action alleged in the Complaint was a failure to increase his bond amount by $65,000. Whereas this was his only wrongful conduct, Gentry claims that a default judgment in the amount of $945,250 is constitutionally excessive, as it bears no proportionality to the conduct itself.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Its purpose is to limit the government's power to punish. Austin v. United States, 509 U.S. 602, 609, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993). Specifically, "[t]he Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." Id. The Supreme Court has also held that "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." United States v. Bajakajian, 524 U.S. 321, 334, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998). Furthermore, "if the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." Id. at 337.

In the instant case, Gentry contends that the default judgment amount is disproportional to the gravity of the harm caused by his failure to increase his bond. Gentry emphasizes that his failure to comply with the order caused no harm to anybody who engaged in business with him and, thus, no real harm occurred because of his failure to comply. In opposition, the Government argues that there was a risk of future monetary loss to other livestock sellers engaging in business with Gentry because the amount of his bond was too low.

Additionally, the Government argues that the judgment is not a fine subject to the Excessive Fines Clause, claiming that the judgment does not constitute punishment. However,

the Supreme Court has held that civil penalties awarded to the government serve a "deterrent purpose" and, therefore, are subject to the Excessive Fines Clause. Austin, 509 U.S. at 622, 113 S. Ct. 2801. The Supreme Court also explained that it is "clear, from both the language of the Excessive Fines Clause and the nature of our constitutional framework, that the Eighth Amendment places limits on the steps a government may take against an individual, whether it be keeping him in prison, imposing excessive monetary sanctions, or using cruel and unusual punishments." Browning-Ferris Indus. v. Kelco Disposal, 492 U.S. 257, 275, 109 S. Ct. 2909, 106 L. Ed. 2d 219 (1989).

Relying on this settled precedent, the Court finds that the default judgment against Gentry is subject to the Eighth Amendment's Excessive Fines Clause, as it is a civil penalty to be paid to the Government and, therefore, serves a "deterrent purpose." Upon consideration of the relevant facts, the Court finds that Gentry has provided sufficient evidence in support of this defense, as there is a strong possibility that the outcome of the suit at trial may be different than that achieved by the entry of this default judgment. Therefore, this factor also weighs in favor of setting aside the judgment.

IV. Additional Factors

In addition to the three Rule 60(b)(1) factors, "[c]ourts may also consider whether the public interest was implicated, whether there was significant financial loss to the defendant, and whether the defendant acted expeditiously to correct the default." Id. at 119. Moreover, the Court need not consider all of the factors but should use the factors to make a decision informed by equitable principles. Dierschke, 975 F.2d at 184.

In default judgment actions for similar amounts, the Fifth Circuit has held that the significant financial loss factor weighed in the defendants' favor. See OCA, Inc., 551 F.3d at 374

9

(holding that a default judgment for $668,153 against a pediatric dental practitioner was significant, which favored setting it aside); Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 403 (finding that a default judgment for $250,000 "is very great, itself militating in favor of a full trial on the merits"). Considering Gentry's representation of his financial situation and Fifth Circuit precedent, the Court finds that a default judgment in the amount of $945,250 would almost certainly cause a significant financial loss to Gentry. As a result, this factor weighs in favor of setting aside the judgment.

Also in Gentry's favor—he acted expeditiously to correct the default. According to his testimony, Gentry first learned about this lawsuit about January 24, 2014, when he read about the default judgment on the internet. Gentry consulted with an attorney soon thereafter, and he filed this motion about three weeks later. This factor, like the others, weighs in favor of setting aside the judgment.

*C. Conclusion*

Upon an application of the relevant factors, resolving all doubts in Gentry's favor, the Court finds that the default judgment against Gentry should be set aside under Federal Rule of Civil Procedure 60(b)(1).

Defendants' Motion to Set Aside Default Judgment is GRANTED.

SO ORDERED, this 2nd day of September, 2014.

                                         **/s/ Sharion Aycock**
                                         **U.S. DISTRICT JUDGE**