IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

UNITED STATES OF AMERICA                                                                    PLAINTIFF

V.                                                              CIVIL ACTION NO.: 1:12-CV-215-SA-DAS

BILLY MIKE GENTRY                                                                           DEFENDANT

MEMORANDUM OPINION

Currently pending is the United States' Motion for Summary Judgment [77], in which it seeks fines and injunctive relief pursuant to the Packers and Stockyards Act, codified at 7 U.S.C. Sections 181-229(b). The Court has considered the motion, relevant authorities, and record evidence, and finds as follows:

*Factual and Procedural Background*

According to the summary judgment record, Defendant Billy Mike Gentry is a livestock dealer and market agency located in Houston, Mississippi.[1] For a number of years, he has been engaged in the practice of purchasing livestock on behalf of himself and others. Under the Packers and Stockyards Act, Gentry is required to register with the United States Department of Agriculture ("USDA") and post a reasonable bond to secure his performance. 7 U.S.C. §§ 203, 204; 7 C.F.R. §§ 201.10, 201.29. He is further required to promptly pay for purchased livestock, and late payment or an outright failure to pay is deemed an unfair practice. 7 U.S.C. § 228(b)(c).

In 1990 and again in 2001, the USDA commenced administrative actions against Gentry before the Secretary of Agriculture for failing to timely pay full purchase price for livestock or

---

[1] The Act defines a "dealer" as "any person . . . engaged in the business of buying or selling in commerce livestock, either on his own account or as the employee or agent of the vendor or purchaser" and a "market agency" as "any person engaged in the business of (1) buying or selling in commerce livestock on a commission basis or (2) furnishing stockyard services." Packers and Stockyards Act § 301(c), (d).

for failing to maintain adequate bond coverage. The actions resulted in civil monetary penalties and two cease and desist orders prohibiting Gentry from purchasing livestock until he maintained and filed an adequate bond. Nonetheless, Gentry continued to operate with what the USDA considered to be insufficient bond coverage and additionally underreported the cost of livestock he purchased as a dealer and as a market agency buying on a commission.

Therefore, in 2007, the USDA commenced a third administrative action before the Secretary of Agriculture, which is the basis for this lawsuit. The USDA attempted to serve the administrative complaint on Gentry by certified mail, but the complaint was returned unclaimed. He was then served by regular mail at his last known business address. Gentry failed to respond or appear, and the administrative law judge subsequently found against him on the basis of default. That order, which was personally served on Gentry, again suspended Gentry from purchasing livestock without filing and maintaining adequate bond coverage. Gentry sought to appeal the decision, but the attempt was subsequently dismissed for procedural deficiencies. The 2008 order from the Secretary of Agriculture became final and effective March 18, 2009.

The Government alleges that between March 18, 2009 and November 30, 2015, Gentry violated the Secretary's order at a prolific pace, purchasing over 17,000 head of cattle for more than $14,000,000. Based on this alleged failure to comply, the Government filed the present action seeking the imposition of penalties and injunctive relief.

The Court initially entered default judgment against Gentry for $945,250 and injunctive relief for his failure to answer or otherwise appear. Gentry thereafter retained counsel, successfully moved to set aside the default judgment, and proceeded with discovery in this cause. In March 2016, Gentry's counsel moved to withdraw, representing that the parties had reached a tentative settlement conditional on Gentry's procuring additional bond coverage and making

"certain specified payments" to the Government, but that Gentry would not comply with the agreement.

While counsel's motion to withdraw was pending, the Government filed this motion for summary judgment. Thereafter, the Court granted defense counsel's motion to withdraw and required them to serve Gentry with the Court's order on withdrawal. This order permitted Gentry twenty-one days to obtain new counsel or notify the Court of his intent to proceed *pro se*, and it extended the deadline for opposing summary judgment by over a month. Though Gentry was duly served with a copy of the Court's order, he has not obtained new counsel or informed the Court of his intent to proceed *pro se*. And even with the protracted time allotted for opposing summary judgment, Gentry has filed no response. Thus, the Government's motion is now ripe for adjudication.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing

3

that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Importantly, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Discussion and Analysis*

The Packers and Stockyards Act provides civil monetary penalties for a "stockyard owner, market agency, or dealer who knowingly fails to obey" an order of the Secretary of Agriculture made pursuant to the Act. 7 U.S.C. § 215(a). The offending party "shall forfeit to the United States" a specified sum for each offense. *Id.*

Following the Secretary of Agriculture's 2008 order, the USDA commenced an investigation into Gentry's livestock activities and discovered repeated unlawful purchases by Gentry. The Government has submitted the declaration of Amy R. Blechinger, the Senior Program Policy Analyst in the Litigation and Economic Analysis Division of the Packers and Stockyards Program within the USDA. According to Blechinger, whose department oversaw the investigation, Gentry engaged in the following prohibited transactions in violation of the Secretary's order.

1) From March and April of 2009, Gentry purchased 894 head of cattle in at least 30 separate transactions, totaling $422,109.55.

2) On June 15, 2010, Gentry purchased 59 head of cattle in at least 10 separate transactions, totaling $23,284.04.

3) During the period January through March 29, 2011, Gentry purchased 1,889 head of cattle in at least 69 separate transactions, totaling $1,173,514.28.

4) From September 3, 2012 through October 29, 2012, Gentry purchased 934 head of cattle in 19 transactions, totaling $639,935.75.

5) From December 4, 2012, through April 17, 2013, Gentry purchased 3,715 head of cattle in 137 separate transactions, totaling $2,620,938.89.

6) From September 1, 2014, through October 6, 2014, Gentry purchased 4,434 head of cattle, totaling $4,941,755.87.

7) From November 30, 2015, through April 6, 2016, Gentry purchased 5,554 head of cattle in 220 transactions, totaling $4,569,594.54.

Gentry has produced no evidence to rebut these findings from the official investigation. Indeed, Gentry's own admissions support the Government's position that he continuously violated the Secretary's 2008 order. For example, Gentry stated in response to interrogatories that he "did not act in bad faith by failing to maintain a $75,000 bond." He "attempted to maintain the bond, but was unable to do so." Gentry also admitted in answer to interrogatories that he purchased livestock as agent for at least fifteen different principals in at least six different locations from January 2009 until September 2015.[2]

Thus, the undisputed evidence demonstrates that Gentry violated the Secretary's order and is subject to the civil penalties prescribed by the Act and regulations promulgated thereunder. The Act imposes a fixed penalty "for each offense[,]" but in the "case of a continuing violation each day shall be deemed a separate offense." 7 U.S.C. 215(a). According to 7 C.F.R. § 3.91, the Secretary is directed to adjust civil monetary penalties at least once every four years. At the time Defendant began operating in violation of the Secretary's order in 2009, the statute

---

[2] Gentry failed to timely respond to the Government's requests for admission, and thus is deemed to have admitted *inter alia* that he was violating the Secretary's 2008 order by (1) currently operating as a livestock dealer and market agency, and (2) operating without the bond required by the Secretary's order. FED. R. CIV. P. 36(b). Though these deemed admissions are alone sufficient to support a ruling in the Government's favor, they are superfluous here, as the Court finds additional unrebutted evidence of Gentry's misconduct.

provided for a penalty of $650 per day for continuing violations, but the penalty was increased to $750 per day for violations occurring after May 8, 2010. Pub. L. Nos. 101-410 & 104-134.

The Government contends Gentry committed "ongoing violations" from March 23, 2009 to February 6, 2014 and then again from September 1, 2014 to May 25, 2016. This results in a maximum statutory penalty of $1,768,000.[3] However, according to the USDA's investigation, Gentry earns only approximately $61,000 per year through his livestock purchasing activities. In view of this evidence and the USDA's recommended fine, the Government pursues only $107,550 in civil penalties, approximately six percent of the amount available under the statute.

The Court has reviewed the summary judgment record and finds that the statutory penalties sought are merited. Accordingly, the Government's request for $107,550 in civil monetary penalties is hereby granted.

*Injunctive Relief*

In addition to authorizing civil monetary remedies, the Packers and Stockyards Act provides for mandatory injunctive relief as follows:

> If after hearing the court determines that the order was lawfully made and duly served and that such person is in disobedience of the same, the court *shall* enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such person, his officers, agents, or representatives from further disobedience of such order or to enjoin upon him or them obedience to the same.

7 U.S.C. § 216 (emphasis added).

The Government seeks an injunction prohibiting Defendant from operating as a dealer or market agency under the Packers and Stockyards Act until he increases his bond coverage and re-registers with USDA as required by the Secretary's 2008 order. Although imposing permanent

---

[3] (March 23, 2009 to May 7, 2010: 410 days x $650 per day = **$266,500**) + (May 8, 2010 to February 6, 2014: 1,370 days x $750 per day = **$1,027,500**) + (September 1, 2014 to May 25, 2016: 632 days x $750 = **$474,000**) = Total: **$1,768,000**

injunctive relief typically requires the Court to weigh considerations such as irreparable injury and the inadequacy of a legal remedy, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982), that analysis does not apply where "a statute clearly mandates injunctive relief for a particular set of circumstances." *Bedrossian v. Nw. Mem. Hosp.*, 409 F.3d 840, 843 (7th Cir. 2005).

However, as the Government recognizes, the Court may only award the statutorily prescribed injunctive relief after a "hearing" to determine whether the Secretary's order was "lawfully made and duly served" and that Gentry is in disobedience of that order.[4] 7 U.S.C. § 216. Accordingly, by separate docket entry, the Court will notice a hearing to make the appropriate determinations regarding the sought injunctive relief.

## Conclusion

For the reasons set forth above, the Government's Motion for Summary Judgment [77] is GRANTED IN PART and DEFERRED IN PART. Judgment in favor of the Government in the amount of $107,550 is entered. The Government's request for an injunction will be entertained at a hearing to be noticed by separate docket entry.

SO ORDERED, this 2nd day of August, 2016.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE

---

[4] The Court previously held a hearing prior to entering default judgment against Gentry. Because the Court set aside that default judgment in its entirety, the findings from that hearing are not binding going forward.